```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
MELISSA BROWN,                                        :

                              Plaintiff,              :

                -against-                             :

CAROLYN COLVIN, ACTING                                :
COMMISSIONER OF SOCIAL SECURITY,
                                                      :
                              Defendant.
------------------------------------------------------X
```

**MEMORANDUM AND ORDER**

13-CV-8934 (KNF)

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

## INTRODUCTION

Melissa Brown ("Brown") commenced this action against the Acting Commissioner of Social Security ("Commissioner"), seeking review of an administrative law judge's ("ALJ") decision, dated August 10, 2012,[1] finding her ineligible for disability insurance benefits, pursuant to Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 401-434, and Supplemental Security Income benefits, pursuant to Title XVI of the SSA, 42 U.S.C. §§ 1381-1385. Before the Court are the parties' respective motions for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## ALJ'S DECISION

The issue before the ALJ was whether Brown was disabled. The ALJ found that Brown: (1) meets the insured status requirements of the SSA through December 31, 2013; (2) has not engaged in substantial gainful activity since April 7, 2010, the alleged disability onset date;

---

[1] The amended complaint alleges, erroneously, that the ALJ denied the plaintiff's claim on October 12, 2012. The record demonstrates that the ALJ's decision is dated August 10, 2012.

1

(3) has severe impairments: "a pseudo seizure disorder, diabetes with neuropathy, obesity and a mood disorder"; (4) does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), and must avoid concentrated exposure to dust, fumes and other pulmonary irritants, as well as working at unprotected heights and operating moving machinery, and she is limited to performing simple, unskilled work; (6) is unable to perform her past relevant work as a home health aide; (7) was born in 1969 and was 40 years old on the alleged disability onset date; and (8) has at least a high school education and is able to communicate in English. The ALJ also found that the transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Brown is not disabled regardless of the transferability of job skills. Considering Brown's age, education, work experience and residual functional capacity, the ALJ concluded that jobs exist in significant numbers in the national economy that Brown can perform. The ALJ determined that Brown's additional limitations have little or no effect on the occupational base of unskilled light work. The ALJ found that Brown was not disabled from April 7, 2010, through the date of the ALJ's decision.

      The ALJ found Brown's allegations respecting her inability to work on a continued, sustained basis, as a result of her functional limitations, incredible. He noted that the objective medical evidence shows that Brown retains the residual functional capacity to perform light work activity, with certain limitations. The ALJ determined that Brown can lift and carry 10 pounds frequently and lift and carry 20 pounds occasionally, she can sit, stand and walk for up to six hours during the course of an eight-hour day. The ALJ noted that Brown has asthma and

diabetes with evidence of neuropathy. The ALJ considered a report from the Montefiore Hospital Medical Center, dated April 2010, indicating that Brown did not suffer from epilepsy and had no need for further psychiatric intervention.

In May 2010, a magnetic resonance imaging ("MRI") test of Brown's brain showed no abnormalities and an MRI test of Brown's "cervical spine showed findings of spondylotic changes in the mid segment of the cervical spine and a central disc herniation at the C4 levels." In October 2010, Brown underwent a consultative internal examination conducted by Dr. Mark Johnston ("Dr. Johnston"). Brown reported having seizures since she was five years old and that her seizure activity had increased within the six to eight months immediately preceding the examination. Brown advised Dr. Johnston that, occasionally, her seizure episodes progress to loss of consciousness, which can last from two to five minutes. She also reported insulin-dependent diabetes mellitus, since 2000. Brown reported that she was independent in terms of cooking, cleaning, laundering, shopping, showering and bathing and needed assistance with dressing, at times, when she had her shaking episodes. Dr. Johnston noted that Brown is 5'3" tall and weighed 248 pounds. Her gait was normal and she did not appear to be in any acute distress. She could walk on her heels and toes without difficulty and perform a full squat. Brown used no assistive devices and did not need help changing or getting on and off the examining table. Due to an episode of twitching of her shoulders and upper arm at the end of examination, Dr. Johnston assessed that Brown should avoid performing activities at heights, driving an automobile, climbing stairs or operating machinery, due to her seizure history.

In February 2011, Brown was admitted to the Montefiore Hospital Medical Center, where it was noted that she was having focal seizures, probably related to her medication non-compliance or exposure to stress. A computed tomography scan test of Brown's head showed no

evidence of intracranial hemorrhage or mass effect. It was concluded that Brown had "recurrent seizure versus pseudoseizure." Brown was discharged, after being prescribed seizure medication. Brown was hospitalized in June 2011. Reports from St. Joseph's Hospital reveal that she had a single episode of seizure with non-epileptic attacks. The ALJ noted that the hospital course was unremarkable for the period October 2009 through May 2011, indicating that Brown presented complaints of seizure activity.

In May 2011, Dr. Johnston conducted another consultative internal examination of Brown. Brown reported having a history of generalized motor seizures, since she was five years old. Brown stated that she had episodes of loss of consciousness which lasted two to three minutes and that seizures occurred several times daily. Additionally, Brown reported having "pseudoseizures" for 12 months prior to the examination, lasting from five to ten minutes at times. Occasionally, the episodes are followed by the development of a generalized motor seizure, occurring 10 to 15 minutes daily. Brown reported to Dr. Johnston that she had a history of numerous hospitalizations for seizures, and that she was diagnosed with hypertension in 2010. Brown stated that she needed assistance with most of her daily activities because of frequent seizures, but that she was able to do some cooking, cleaning, laundering, shopping, child care activities and could tend to her personal needs. On examination, Brown appeared to be in no acute distress and her gait was normal. She could walk on her heels and toes without difficulty and perform a full squat. Brown used no assistive device and did not need help changing or getting on and off the examining table. Dr. Johnston assessed that Brown had a marked restriction of travel due to frequent seizures and she was unable to drive a motor vehicle, operate machinery or work at unsecured heights. Moreover, Dr. Johnston assessed that Brown should avoid exposure to smoke, fumes and known respiratory irritants due to her asthma.

In June 2011, Brown underwent a consultative psychiatric hospitalization, conducted by Dr. Fredelyn Engelberg Damani ("Dr. Damani"). Brown reported that she stopped working because of seizures and depression and denied having a history of psychiatric hospitalization or receiving outpatient mental health treatment. On mental status examination, Dr. Damani found that Brown's attention and concentration were intact and her memory skills were mildly impaired. Brown's cognitive functioning was in the low average range, her insight was limited and judgment was fair. Dr. Damani diagnosed Brown with an adjustment disorder with anxiety and depression, as well as a panic disorder without agoraphobia. Brown was able to follow and understand simple directions and instructions, perform simple tasks independently and maintain attention and concentration. Dr. Damani found that Brown was impaired moderately in her ability to maintain a regular schedule due to her seizure disorder, but she was able to learn tasks. Brown was assessed as mildly impaired in her ability to perform complex tasks independently, but was able to make appropriate decisions and relate adequately with others. Dr. Damani also determined that Brown was moderately impaired in her ability to deal with stress. Dr. Damani concluded that the results of the examination appeared to be consistent with psychiatric problems, but not significant enough to interfere with Brown's ability to function on a daily basis.

In June 2011, Dr. R. Altmansberger ("Dr. Altmansberger"), a state agency review psychiatrist, prepared a mental functional capacity questionnaire and psychiatric review form for Brown. Dr. Altmansberger assessed that Brown had a moderate limitation in her ability to: (1) carry out detailed instructions; (2) perform activities within a schedule and maintain regular attendance; (3) respond appropriately to changes in a work setting; (4) complete a normal workday and work- week without interruptions from psychologically based symptoms; and

5

(5) perform at a consistent pace without an unreasonable number and length of rest periods. The ALJ found that Dr. Altmansberger's assessment was consistent with the objective record evidence, showing that Brown had no sustained mental health treatment history and was not on any psychiatric medication.

Reports by Dr. Gerardo Posada ("Dr. Posada"), Brown's treating psychiatrist from October and November 2011, revealed that Dr. Posada diagnosed Brown with a "[m]ood disorder, NOS [not otherwise specified] and rule[d] out bipolar depression." Dr. Posada stated that Brown was on a low dosage of psychiatric medications. The ALJ found that the "record contains no documentation to demonstrate [Brown's] overall mental functioning was markedly limited to the extent Dr. Posada has stated for a period of 12 continuous months at any time since her alleged onset date." The ALJ noted that no documentation showed whether mental health treatment has been effective since Brown commenced it, in October 2011, and Dr. Posada's November 2011 assessment indicated that Brown only had three visits for medication and management, and she was not well known to him because she was "new" to his practice. Dr. Posada stated that Brown is able to do unskilled work and that she was seriously limited, but not precluded from work, since October 2011, at the earliest.

In February 2012, Brown was treated at Montefiore Hospital, where she presented with complaints of shortness of breath. Brown was diagnosed with asthma, iron deficiency, anemia, Type II diabetes mellitus, chronic headaches, diabetic neuropathy, vitamin D deficiency and diastolic heart failure. The ALJ determined that Brown's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence and limiting effects of those symptoms were not credible.

The ALJ found that Brown is unable to perform her past relevant work as a home health aide. The ALJ determined that Brown's additional limitations have little or no effect on the occupational base of unskilled light work, concluding that Brown was not disabled from April 7, 2010, through the date of the ALJ's decision.

### PLAINTIFF'S CONTENTIONS

Brown makes two arguments. First, Brown contends that her history of seizures equals a listing level of severity for "focal or petite mal epilepsy." According to Brown, the "record is replete with evidence that Plaintiff suffers from seizures," including that: (a) she was observed during seizures at hospital emergency rooms and during hospital stays on numerous occasions; (b) she reported seizures more than six to seven times per day since childhood and was observed to have had several seizures during a single three-day hospital admission; and (c) her family members confirmed that Brown loses consciousness during seizures two to three times per week. Brown maintains that a question remains whether she suffered from focal seizures, pseudoseizures or a combination of both, but "the etiology of her seizures makes no difference," because her seizures "equal a listing level of disability."

Second,[2] Brown contends that the ALJ found her testimony concerning her functional limitations and their effect on her ability to work incredible, but, in making his conclusion that Brown retained the residual functional capacity to perform light work, the ALJ ignored the medical evidence which supported Brown's assertion of her limitations. Brown contends that she has a medically documented history of neuropathies in her arms and legs, which could be

---

[2] The title of Brown's second argument, "POINT II ADMINISTRATIVE LAW JUDGE GAVE CONSIDERATION TO THE COMBINED THE NO EFFECT OF PLAINTIFF'S TO WORK," is incomprehensible. Nonetheless, the Court considered the substantive content of "Point II."

expected to cause her pain. However, the ALJ gave no consideration to the limiting effect of the pain from Brown's neuropathies. Moreover, medical evidence shows that Brown experienced migraine headaches, but the ALJ failed to consider the limitations on Brown's ability to work caused by the pain from the migraines. Brown testified that she could walk for five minutes and stand for two to three minutes, because of her seizures. Brown asserts that, even if her seizures were not found to equal a listing level of severity, in light of the medical evidence, they should have been considered in determining her ability to work because they prevented her from ambulating and induced her passing out. Brown asserts that she suffers from a back condition and uses a walker. The ALJ credited Brown's testimony that she could lift up to 10 pounds frequently and lift 20 pounds occasionally, but failed to consider her testimony that she had difficulty bending and squatting, limiting this capacity. Moreover, contrary to medical evidence, the ALJ found that Brown could sit and walk for up to six hours during the course of an eight-hour day. The ALJ did not consider the effect on her back condition of performing a full-time job in which Brown was required to lift 10 pounds frequently and up to 20 pounds occasionally, and he also failed to consider the limitations posed on Brown by her "heart failure, obesity, and asthma." The ALJ erred when he stated that Brown was not on any psychiatric medication, which is contrary to the records from Montefiore Hospital and her treating psychiatrist, Dr. Posada, showing that she was being treated with psychiatric medication.

   Attached to Brown's memorandum of law is what purports to be a letter, dated December 23, 2014, from Broadway Medical Services in Yonkers, New York, signed by Dr. Joe W. Chamberlin ("Dr. Chamberlin") concerning Brown. The December 23, 2014 letter states:

> This letter is to verify that Ms. Melissa Brown is a patient under my care at Broadway Medical Service. Ms. Brown is a 44 year old female that is being treated for the following conditions: Scoliosis, Sciatica, Seizures, High Blood Pressure and

Diabetic Neuropathy. She is also suffering from a pinched nerve on her neck and lower back. Due to the fact that Ms. Brown has a pinched nerve she needs assistance while walking, the reason being she has a walker since June of 2013.

### DEFENDANT'S CONTENTIONS

The defendant contends that the ALJ's decision is supported by substantial evidence. More specifically, the ALJ's determination that Brown's mental impairments did not satisfy the criteria of Listing 12.04 or 12.06 is supported by substantial evidence. The defendant asserts that, in the function report submitted in connection with Brown's application for benefits, Brown reported that she went shopping for two hours at a time, was able to pay her bills, count change, handle a savings account and her own money. Brown reported to her treating physicians and consultative examiner that she did most of the child care for her son and was independent in cooking, cleaning, laundering, showering and bathing, but needed to be monitored and sometimes assisted with these activities because of her unpredictable seizures. In the function report, Brown stated that she socialized every day, mostly over the telephone, attended church on Sundays and had no problem getting along with others. Dr. Damani found that Brown had intact attention and concentration and a moderate impaired ability to maintain a schedule. According to the defendant, no evidence of sufficiently repeated and extended episodes of decompensation exists.

The defendant contends that no evidence exists suggesting that Brown satisfies the conditions of either convulsive or non-convulsive epilepsy, as detailed in Listings 11.02 and 11.03. According to the defendant, no evidence exists of epilepsy; rather, a history exists of treatment for shaking or convulsive episodes diagnosed as "pseudoseizures" and "non-epileptic events." The defendant asserts that Brown's history of pseudoseizures and shaking episodes does not satisfy the specific criteria in Listings 11.02 or 11.03. The defendant contends that

9

Brown's diabetes mellitus with neuropathy and her complaints of weakness in her legs do not satisfy the requirements of Listing 9.08, that her diabetes caused neuropathy in two extremities resulting in a sustained disturbance of gross and dexterous movements or gait and station, acidosis or retinitis proliferans.

      The defendant asserts that substantial evidence supports the ALJ's residual functional capacity determination. Contrary to Brown's contention, the ALJ considered the evidence relating to her seizures and asthma, incorporating it in his opinion. Dr. Johnston's October 5, 2010 examination revealed largely normal findings, and Brown reported that she engaged in a wide range of daily activities. The defendant contends that the ALJ considered properly Dr. Johnston's opinion, taking into account the limitations identified by Dr. Johnston. Moreover, the ALJ acknowledged Brown's claims that she suffered from seizures, diabetes, poor circulation in her lungs, back pain, leg and foot pain, high blood pressure, depression, mood swings, memory problems, asthma and a congestive heart condition. The ALJ evaluated the medical reports dealing with Brown's condition and found them properly not to be severe enough to justify disability. Additionally, the ALJ determined expressly that Brown's obesity was a severe impairment. The defendant contends that the ALJ's residual functional capacity assessment is also consistent with Brown's alleged history of back pain and headaches. In February 2012, Brown was discharged from the hospital with instructions to engage in activities "as tolerated," and she engaged in a variety of daily activities, albeit with some assistance. According to the defendant, substantial evidence supports the ALJ's limitation of Brown's residual functional capacity to simple, unskilled work. The ALJ observed correctly that Brown had not received treatment from a mental health provider until she saw Dr. Posada, on October 3, 2011, and Dr. Posada indicated that he was not familiar with Brown because she was new to his practice and he

had only seen her twice before November 2011. The defendant asserts that the ALJ noted properly that no evidence exists to suggest that Brown's mental impairments markedly limited her functioning for a period of 12 months prior to 2012. The defendant contends that the ALJ's determination of Brown's credibility was proper, and her ability to perform daily activities is belied by her allegations of total disability. Moreover, no documented history of psychiatric hospitalization, outpatient treatment or use of psychotropic medication, prior to seeing Dr. Posada, exists. The defendant maintains that the ALJ relied properly on the Medical-Vocational Guidelines because Brown's non-exertional impairments did not so limit her possible range of work as to deprive her of meaningful employment.

## PLAINTIFF'S REPLY

Brown contends that the record shows that she "had seizures severe enough to require medical attention at the end of February, 2010, which should mark, at the latest, the beginning of treatment." Moreover, the ALJ's determination that Brown was exaggerating her inability to work "was contradicted not only by all the treating sources but also by the consulting physical medical examination." According to Brown, her "seizures have at least the same frequency, duration, and seriousness, as those associated with 20 [C.F.R.] Part 404 Appendix, 11.02, grand mal seizures, which must occur at least once monthly and as well, the seizures listed under 11.03 which must occur at least weekly, and be accompanied by loss of consciousness and convulsive seizures," which have been established here.

Brown asserts that the ALJ ignored unchallenged evidence of diabetes mellitus with neuropathia as causing or contributing to disability. She contends that the ALJ's conclusion that Brown's description of her limitations was inconsistent with the objective medical evidence was erroneous because "there was no objective medical evidence which contradicted" her statements.

11

Brown asserts that an MRI showed spondylitic changes in the cervical spine and central disc herniation at the C-4 Level. According to Brown, the ALJ had an affirmative duty to make a complete record concerning Brown's spondylitic changes of the cervical spine and central disc herniation.

Brown contends that the ALJ's rejection of Brown's psychiatrist's assessment of her mental disability was not supported by the record, and the ALJ failed to develop the record. The ALJ's statement that Brown has not resided in a supported living environment is contrary to the evidence. Brown maintains that her "own description of the assistance she received from family members whom she lived with is entirely consistent with a description of Plaintiff's account of her home environment as one which could be described as a highly supportive living environment." Brown contends that the defendant misstated the fact from the consulting psychologist's report that she "assisted in 'child care' for her son, who was twenty-four years old at the time of the hearing." According to Brown, where the ALJ noted that she was "new" to Dr. Posada's practice, the ALJ had a duty to develop the administrative record because more than one year passed since that time and the ALJ's decision, providing "ample time for the psychiatrist to learn more about his patient and for his evaluation to be supplemented by what he had learned." Instead, the ALJ "discounted the opinion because of the newness of the treatment a year before the decision, in breach of his duty to develop the record." Brown contends that the ALJ's determination that she could perform a full range of light work is not supported by substantial evidence.

## LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The court shall have power to enter,

upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

> A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
>
> Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted).

"Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (internal citations omitted). "It is not the function of a reviewing court to decide *de novo* whether a claimant was disabled, or to answer in the first instance the inquiries posed by the five-step analysis set out in the [Social Security Administration's] regulations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (internal citation omitted).

To qualify for disability benefits, an individual must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Social Security Administration's regulations establish a five-step process for determining a disability claim. See 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

> If at any step a finding of disability or nondisability can be made, the [Social Security Administration] will not review the claim further. At the first step, the agency will find nondisability unless the claimant shows that he is not working at a "substantial gainful activity." At step two, the [Social Security Administration] will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to

> survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the [Social Security Administration] assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the [Social Security Administration] to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.

Barnhart v. Thomas, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003) ( internal citations omitted).

"Because a hearing on disability benefits is a nonadversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." Melville, 198 F.3d at 51. The Social Security Administration's regulations require that the ALJ develop the claimant's complete medical history and "make every reasonable effort" to assist the claimant in obtaining medical records. See 20 C.F.R. §§ 404.1512(d), 416.912(d).

"[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (citations omitted).

> In light of the ALJ's affirmative duty to develop the administrative record, an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record. Further, the ALJ must not only develop the proof but carefully weigh it. Finally, even when a treating physician's opinion is not given controlling weight, the regulations require the ALJ to consider several factors in determining how much weight it should receive. The ALJ must consider, *inter alia*, the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence . . . , particularly medical signs and laboratory findings, supporting the opinion, the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues. . . . After considering the above factors,

14

the ALJ must comprehensively set forth his reasons for the weight assigned to a treating physician's opinion.

Id. at 129 (internal quotation marks, alterations and citations omitted).

"Although the claimant bears the general burden of proving that he is disabled under the statute, 'if the claimant shows that his impairment renders him unable to perform his past work, the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform.'" Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002) (quoting Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)). Ordinarily, the Commissioner's burden is met "by resorting to the applicable medical vocational guidelines." Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999) (citation omitted). In considering work which exists in the national economy, the ALJ "will decide whether to use a vocational expert or other specialist." 20 C.F.R. §§ 404.1566(e); 416.966(e).

A court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). To obtain a remand based on new evidence, the plaintiff must show that the evidence proffered is: (1) "'new' and not merely cumulative of what is already in the record"; and (2) "material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative." Lisa v. Sec'y of Dep't of Health & Human Servs., 940 F.2d 40, 43 (2d Cir. 1991) (citations omitted). Additionally, the claimant must show "good cause for her failure to present the evidence earlier." Id. To be material, new evidence must be such that "would have influenced the [Commissioner] to decide claimant's application differently." Id.

15

# APPLICATION OF LEGAL STANDARD

*The ALJ's Failure to Develop the Record*

In considering the reports of Dr. Posada, Brown's treating psychiatrist, the ALJ noted that Dr. Posada's November 2011 report indicated that Brown "was not well known because she was 'new' to his practice." The ALJ neither stated what weight he gave to Dr. Posada's opinion, nor explained the reasons for giving it any weight. It appears that the ALJ rejected Dr. Posada's opinion, at least partly, inasmuch as the ALJ stated: "The record contains no documentation to demonstrate the claimant's overall mental functioning was markedly limited to the extent Dr. Posada has stated for a period of 12 continuous months at any time since her alleged onset date." In light of the ALJ's seeming rejection of Dr. Posada's opinion, acknowledging that, in November 2011, Brown was "new" to Dr. Posada's practice, and the fact that Dr. Posada was Brown's treating physician, the ALJ had an affirmative duty to develop the administrative record. The ALJ rejected, improperly, Dr. Posada's opinion, without first attempting to fill any gaps in the administrative record. Moreover, the ALJ committed legal error when he failed to: (a) specify the weight given to Dr. Posada's opinion; and (b) set forth, comprehensively, his reasons for the weight he assigned to Dr. Posada's opinion.

The December 23, 2014 letter, stating that Brown "has a walker since June of 2013," is new evidence material to Brown's disability claim. The ALJ stated in his decision that Brown "must establish disability on or before [December 31, 2013] in order to be entitled to a period of disability and disability insurance benefits." The December 23, 2014 letter is probative of Brown's claim, since it indicates that Brown was using a walker during the period of time within which the ALJ stated she had to establish that she was disabled. The Court finds that the ALJ

16

failed to develop the administrative record, as he is obligated to do, see Melville, 198 F.3d at 51, and thereby committed an error.

## *Remand*

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," remand to the Commissioner for further development of the evidence and an application of the proper standard is warranted. Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980). Here, remand to the Commissioner to enable the ALJ to develop the administrative record and apply the proper legal standard, as explained above, is appropriate.

## CONCLUSION

For the foregoing reasons: (1) the plaintiff's motion, Docket Entry No. 26, is granted, and the case remanded to the Commissioner for further consideration, pursuant to sentence four of 42 U.S.C. § 405(g); and (2) the defendant's motion, Docket Entry No. 33, is denied.

Dated: New York, New York
May 26, 2015

SO ORDERED:

*Kevin Nathaniel Fox*
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE